MOTT (RIDDLE v.). See Case No. 11,810.

## Case No. 9,881.

### MOTT v. RUCKMAN.

[3 Blatchf. 71; [1] 16 Law Rep. 397.]

Circuit Court, S. D. New York. Oct. 10, 1853.

MARITIME LIENS—SUPPLIES—FURNISHED TO MASTER—SHIPPING—CHARTER-PARTY—RECORD—CONVEYANCE.

1. Where the master of a vessel, who was her charterer for a specific term, under a charter-party which provided that he should furnish her with all requisite stores, purchased supplies for her: Held, that the master, and not the owner, was exclusively responsible for the supplies. [Cited in The Caroline Casey, Case No. 2,421a.]

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

2. *Held*, also, that, under the circumstances of this case, the vendor of the supplies was chargeable with notice that the master was the charterer.

3. Semble, that a charter-party is not a conveyance, within the provisions of the act of July 29, 1850 (9 Stat. 440), and is not required to be recorded in the collector's office.

[Cited in Perkins v. Morse, 78 Me. 20.]

4. The recording or non-recording of the conveyance of a vessel, only affects the question of the priority of liens on the vessel. It does not affect the question of the personal liability of her owner.

[Cited in Secrist v. German Ins. Co., 19 Ohio St. 484.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in personam, filed in the district court, by [John H.] Mott against [Elisha B.] Ruckman, as owner of the brig Radius, to recover the sum of $274, for necessary stores and provisions furnished the vessel upon the order of her master. She was about entering upon a voyage from New York to Norfolk, Va., and thence to the West Indies, and credit was given for the bill of supplies until she should return from her voyage. Jennett, the master, who ordered the supplies, chartered her from Ruckman, on the 25th of September, 1851, for twelve calendar months from that date, at the rate of $200 per month, the charterer to keep the vessel in good repair during the term, and pay all bills and demands against her, and do all acts necessary to her safety and good condition, and deliver her up in good order at the expiration of the twelve months, ordinary wear and tear excepted. There was also a special stipulation in the charter-party, that the charterer should furnish the vessel with all the requisite stores and materials, and should also bear the expenses of her navigation, the vessel to be delivered into his possession for his sole use and disposal during the said term. The vessel had been purchased by Ruckman on the 25th of September, 1851. On the same day, the sale was recorded, the vessel was registered in his name, and the charter-party was entered into between him and Jennett. The supplies in question were ordered by Jennett on the 19th of September, although they were not delivered until the 25th. The question in the case was, whether or not the owner was liable for them under the circumstances. The supplies were furnished by the firm of S. & E. S. Bloomfield; but, in order that the members of that firm might be witnesses in the case, they assigned the demand to the libellant, and one of the members of the firm was the principal witness to sustain the action. Jennett, who was a witness for the defence, testified that, at the time he purchased the supplies, he informed the firm, that he had chartered the ship for the voyage above mentioned, and that he wanted the goods on credit until the vessel should return, which was agreed to.

The vessel returned in February, 1852, and, soon afterwards, the bill was presented to him for payment, but was not paid. Bloomfield denied that Jennett informed the firm, at the time of the purchase, that he had chartered the vessel from Ruckman for the voyage; but admitted that Jennett told him, at the time, that Ruckman was negotiating for the purchase of the vessel, that the papers for the transfer had not been completed, but that they would be in a few days, and that he (Jennett) was to be the master. He further stated, that he delayed the delivery of the stores until Ruckman became the owner, for the purpose of securing his liability for the payment; and that he ascertained that the title of the vessel was perfect at the custom-house before the goods were actually delivered.

[This is the substance of the testimony in the case that has any material bearing upon the question involved, although the examination of the witnesses was extended in the court below to a most unreasonable and unprofitable length.] [2]

The court below decreed in favor of the libellant. The respondent appealed to this court.

John Cochrane, for libellant.

Edward Sandford, for respondent.

NELSON, Circuit Justice. Looking at the case in any aspect in which it can be viewed, it is quite clear, that, although Ruckman was the general owner of the vessel at the time the supplies were furnished, yet Jennett, who procured them, was himself the owner pro hac vice, by virtue of the charter-party, and hence the person exclusively responsible for them. Frazer v. Marsh, 13 East, 238; McIver v. Humble, 16 East, 169; Reeve v. Davis, 1 Adol. & El. 312; Abb. Shipp. (4th Am. Ed.) 22, and notes; Webb v. Peirce [Case No. 17,-320]. He was not the master of Ruckman at the time, but the master of the vessel, representing his own interest as charterer. Ruckman had neither appointed him, nor held him out to the public as the master of a vessel over which he had any control; and hence Jennett possessed no power to bind him, as his agent.

This was admitted by the counsel for the libellant, on the argument; but it was insisted that, in the absence of notice of the charter-party to the persons who furnished the stores, it must be regarded as null and void, under the provisions of the act of July 29, 1850 (9 Stat. 440). But, assuming this to be so, I am satisfied that the Messrs. Bloomfield are chargeable with notice. Besides the positive testimony of Jennett, it appears that they made inquiry in respect to the fact of the purchase of the vessel by Ruckman and of the transfer of her title, of which vessel Jennett was to become the master. Having made this inquiry, they must have known

---

[2] [From 16 Law Rep. 397.]

the relation in which he stood as master of the vessel; or, if they did not, the failure must be attributed to their own negligence. After they took so much pains to ascertain the point of time when the negotiation for the vessel was concluded, and when Ruckman became owner, so as to charge him with the stores previously ordered by Jennett, and delayed the delivery till he could become the master, it is difficult to say that they were not cognizant of all the circumstances connected with the transaction, and consequently of the relation in which he stood as master of the vessel. I cannot doubt, therefore, that they are properly chargeable with notice of that relation, if the fact be at all material.

The act of July 29, 1850, provides, that no bill of sale, mortgage, hypothecation, or conveyance of any vessel, &c., shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless the same be recorded in the office of the collector, &c. The second section provides for the recording; and the third, that the collector shall keep an index of such records, inserting, alphabetically, the names of the vendor or mortgagor, and of the vendee or mortgagee, &c. The argument is, that the charter-party in question is a conveyance, within the first section of the act, and, not having been recorded, is, therefore, void as to third persons who have not had actual notice of it, and hence is not in the way of the libellant. There is, undoubtedly, some plausibility in the argument, and some difficulty in answering it. And yet, the instrument in question is so common and well known in the business of commerce, and in the use and employment of vessels, that if congress had intended to embrace it, it would have been most natural to have mentioned it in terms. And the phraseology of "vendor" and "vendee," and "mortgagor" and "mortgagee," used in the third section of the act, to designate every description of conveyance specified in the first, is scarcely appropriate language to define a charter-party. But, be this as it may—and I do not intend to express any definite opinion upon it—it seems to me quite clear that, even conceding the construction contended for, the only consequence would be to subject the vessel to liability in favor of third persons, the same as if no conveyance had been made. Recording acts relate to conflicting interests, and liens acquired in and upon lands and chattels, and are designed to regulate the same. Thus, in the present case, if the Messrs. Bloomfield had had a valid lien upon the vessel for the stores furnished, a previous unrecorded conveyance by the master would be postponed. This is the extent of the act. In my judgment, it has nothing to do with the personal liability of the owner of the vessel. It is important when the question relates to an interest in or claim upon the vessel itself, but not otherwise.

In any view, therefore, that I have been able to take of the case, I think that the decree of the court below was erroneous, and that it must be reversed, with costs.